**Barthelmio DALLI, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 47, Docket 73–1536.**

United States Court of Appeals, Second Circuit.

Argued Oct. 24, 1973.

Decided Jan. 14, 1974.

Albert J. Krieger, New York City (Alan Scribner, New York City, of counsel), for appellant.

Paul V. French, Asst. U. S. Atty. (James M. Sullivan, Jr., U. S. Atty., N. D. N. Y., Syracuse, N. Y., of counsel), for appellee.

Before SMITH, MANSFIELD and OAKES, Circuit Judges.

MANSFIELD, Circuit Judge:

After a jury trial before Judge MacMahon Barthelmio Dalli was on May 26, 1969, convicted of selling, receiving and concealing heroin, 21 U.S.C. §§ 173 and 174, and of conspiracy to commit the same, 18 U.S.C. § 371. He was sentenced to concurrent terms of 20 years on each of two counts. The conviction was affirmed by this court. United States v. Dalli, 424 F.2d 45 (2d Cir.), cert. denied, 400 U.S. 821, 91 S.Ct. 39, 27 L.Ed.2d 49 (1970). In November 1972 Dalli filed a petition pursuant to 28 U.S.C. § 2255 alleging that the evidence admitted at his trial was tainted by illegal wiretap activities of the New York state police. In support of his petition Dalli introduced an affidavit from a former New York state police lieuten-ant who had supervised the alleged wire-tapping. On the basis of the motion papers and the files and records of the case, Judge MacMahon denied the motion without a hearing. In view of the deficiencies of the supporting affidavit we affirm.

Appellant's § 2255 petition seeks in effect to reopen an issue raised and re-solved against him after a pretrial sup-pression hearing in May 1969. Prior to appellant's trial a full evidentiary hear-ing was held to determine whether his arrest and the heroin found in his pos-session at the time of arrest were the fruits of an allegedly illegal state wire-tap. The federal government main-tained that its investigation and arrest of the appellant were independent of any state investigation or wiretap. Federal agents testified that their interest in ap-pellant was sparked by his frequent vis-its to the Beauty Trail Hair Parlor, re-putedly an emporium for narcotics, lo-cated in Brooklyn. Their observations prompted them to check appellant's tele-phone record, which disclosed several calls to Thomas Pytel, a man suspected by Canadian authorities to be trafflick-ing in narcotics. Further surveillance of appellant revealed a meeting on Sep-tember 7, 1968, between appellant and Stanley Simmons, likewise a suspected dealer in narcotics. Several days later federal agents followed appellant and Simmons to a Plattsburg, New York, motel where the two met with Pytel and a Canadian associate to transact some business in narcotics. Dalli and Sim-mons were arrested shortly after leaving the motel with 11 pounds of heroin in their possession.

At the 1969 pretrial suppression hear-ing it was disclosed that the New York state police had, pursuant to a New York state court order, been wiretapping the Beauty Trail Hair Parlor during August and September 1968.[1] The gov-ernment produced the wiretaps and tran-scripts thereof for inspection by appel-

---

1. As part of the same effort the home telephone of Ronald Carr, owner of the beauty parlor, was tapped.

lant. Dalli and his co-defendants seized upon only one call as evidence of taint. The call was between Dalli and Simmons, made from the telephone at the Beauty Trail Hair Parlor, in which the two agreed to meet on the evening of September 7, 1968. This was the meeting watched by the federal agents, which occurred several days prior to Dalli's arrest. The agents, however, testified that they had received no information concerning the September 7th meeting from the state police, that their knowledge of the meeting and their ultimate arrest of appellant resulted solely from their 24-hour surveillance of appellant, and that they did not learn of the wiretaps until much later, shortly before the 1969 hearing. Supporting their version of the case was the testimony of Charles Cassino, then a New York state police lieutenant in charge of the Beauty Trail Hair Parlor wiretaps. Cassino testified that he had passed no wiretap information to the federal agents; indeed, he professed ignorance of the fact that Dalli had spoken with Simmons on an intercepted call. On the basis of this testimony the district court concluded that the federal investigation and arrest of Dalli stood untainted by the state wiretap activities. Thereupon Dalli was tried and convicted.

Three and one half years after his conviction Dalli sought by the present § 2255 petition to overturn the earlier finding that his conviction was untainted, or at least to re-argue its merits, largely on the basis of an affidavit from former lieutenant Cassino.[2] Judge MacMahon, who had presided at the 1969 suppression hearing and trial, dismissed the present petition without an evidentiary hearing. Appellant here urges that it was error to have denied him a hearing. We disagree.

As a recent pronouncement indicates, this court takes a dim view of any summary rejection of a petition for postconviction relief when supported by a *"sufficient* affidavit." See Taylor v. United States, 487 F.2d 307 (2d Cir. Nov. 14, 1973). But we have, consistently with that pronouncement, recognized that a judge is well within his discretion in denying a petition when the supporting affidavit is insufficient on its face to warrant a hearing. See Accardi v. United States, 379 F.2d 312 (2d Cir. 1967); Mirra v. United States, 379 F.2d 782 (2d Cir. 1967). Section 2255 requires a hearing to resolve disputed issues of fact "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." See Fontaine v. United States, 411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169 (1973). In making that threshold determination the court looks primarily to the affidavit or other evidence proffered in support of the application in order to determine whether, if the evidence should be offered at a hearing, it would be admissible proof entitling the petitioner to relief. Mere generalities or hearsay statements will not normally entitle the applicant to a hearing, D'Ercole v. United States, 361 F.2d 211, 212 (2d Cir.), cert. denied, 385 U.S. 995, 87 S.Ct. 610, 17 L.Ed.2d 454 (1966), rehearing denied, 385 U.S. 1032, 87 S.Ct. 758, 17 L.Ed.2d 680 (1967); United States v. Catalano, 281 F.2d 184 (2d Cir.), cert. denied, 364 U.S. 845, 81 S.Ct. 88, 5 L.Ed.2d 69 (1960); Paroutian v. United States, 395 F.2d 673, 674 (2d Cir. 1968), cert. denied, 393 U.S. 1058, 89 S.Ct. 700, 21 L.Ed.2d 700 (1969); Holland v. United States, 406 F.2d 213, 216 (5th Cir. 1969); Barnett v. United States, 439 F.2d 801, 802 (6th Cir. 1971), since such hearsay would be inadmissible at the hearing itself. United States v. Pisciotta, 199 F.2d 603, 607 (2d Cir. 1952); Brady v. United States, 404 F.2d 601, 602 (10th Cir. 1968), affd., 397 U.S. 742, 90 S.Ct. 1463, 25 L.

---

2. Subsequent to Judge MacMahon's decision to dismiss, appellant learned of a state court report of wiretaps authorized during the period under question. Appellant believes that this report substantiates certain of Cassino's statements in his affidavit. We will consider that report as part of the record for this appeal.

Ed.2d 747 (1970). The petitioner must set forth specific facts which he is in a position to establish by competent evidence. Machibroda v. United States, 368 U.S. 487, 495–496, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Furthermore, where the petitioner has already had a full evidentiary hearing upon the same claim and seeks another hearing on grounds of newly discovered evidence, greater specificity is required than if no hearing had been held, in order to avoid relitigation of issues on the basis of proof already deemed insufficient.

■ Applying these principles, we are satisfied that the Cassino affidavit, which is the crux of the petition, failed to meet this threshold of sufficiency. Most of the affidavit is devoted to evidence already received and considered at the 1969 suppression hearing. When it comes to the key "newly discovered" evidence offered to support the renewed claim that the federal arrest and seizure was tainted by the state wiretap Cassino's averments are not only vague, indefinite and conclusory but marbled with hearsay. Thus Cassino states that "[s]ubsequent to May, 1969, *I learned that* it was a common practice during the course of this investigation for Investigator Kaynor [of the New York state police] to take the tapes representing the previous day's eavesdropping and together with Agent John J. O'Brien of the Bureau of Narcotics and Dangerous Drugs, go to one of these rooms and there review the tapes." (Emphasis added). This is not only hearsay, but hearsay singularly lacking in specificity.[3] Cassino does not say how or from whom he learned this. His testimony along these lines would be inadmissible at a hearing on Dalli's petition. There is no indication that the wiretaps or transcripts of them were in fact furnished to the federal officers, much less that this fact would be established by competent evidence.

The other portion of the Cassino affidavit heavily relied upon by appellant is its vague statement to the effect that the Dalli-Simmons meeting of September 7th "persuaded us to seek further eavesdropping assistance, and telephone numbers presently unknown to me located at or near the residence of Dalli were tapped." Although we cannot confidently say whether this averment is based on hearsay or on Cassino's personal knowledge, its indefinite form sharply reduces its substantiality. See Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Accardi v. United States, 379 F.2d 312, 313 (2d Cir. 1967). Furthermore it is somewhat inconsistent with other evidence offered as corroboration for Cassino's allegation of undisclosed wiretaps on Dalli. This evidence, to which counsel for Dalli has directed our attention, consists of a report issued by judges of the New York Supreme Court, Kings County, which schedules the applications for, and authorizations of, wiretaps during the period of June 20 to December 31, 1968 (a period relevant to the present case). The report indicates that on August 8, 1968, a district attorney sought and received approval for three wiretaps, one on a beauty parlor and two on private residences. At trial the government had disclosed only two wiretaps as related to this case, one on the Beauty Trail Hair Parlor and the other on the residence of Ronald Carr, owner of the parlor, both issued on August 8th. Dalli now suggests that the report of a third wiretap corroborates Cassino's allegation that there was a wiretap on Dalli's home. Cassino's affidavit, however, alleges that the state police were prompted to seek further taps as a result of the Dalli-Simmons meeting of September 7th, which postdates by one month the date, August 8, 1968, when the application for the third tap was granted. While the report indicates that there may have

3. The statement was nonetheless felicitously worded from Cassino's point of view. He says he learned of the cooperation between Kaynor and O'Brien *subsequent to May*

*1969.* May 1969 was of course the time of Cassino's appearance at the Dalli pretrial hearing where he offered testimony that conflicts with that of the affidavit.

been an unaccounted for and possibly related wiretap, it hardly provides direct corroboration for Cassino's story, especially in view of the gross disparity in time between the affidavit and the report.

 Even if Cassino is correct in his belief that a tap was initiated on Dalli's home telephone, Cassino is not in a position to aver, and nowhere in his affidavit does he attempt to aver as a matter of personal knowledge that any information from a state wiretap was passed to federal agents. That there was any transmittal of wiretap information was denied under oath by the federal agents who testified at the original hearing. Edward Kaynor, the state police investigator reported by Cassino on the basis of an unidentified source as having passed wiretap information to the federal agents, submitted an affidavit in opposition to the appellant's motion in which he also denied each such allegation.[4] Moreover, portions of Cassino's affidavit are specifically contradicted by his prior testimony at trial.[5] Furthermore the credibility of the affidavit was for other reasons open to question.[6] With the obvious deficiencies of the Cassino affidavit viewed against the files and records of the case and in light of the fact that petitioner had already had one hearing on substantially the same claim the trial court did not err in denying the petition without a hearing.

The order below is affirmed.

---

4. Although opposing affidavits from the government cannot be deemed part of the records and files of a case for purpose of showing that the petitioner is entitled to no relief under 28 U.S.C. § 2255, Taylor v. United States, 487 F.2d 307 (2d Cir. Nov. 14, 1973), they may be considered in assessing the sufficiency of the petitioner's supporting affidavit. See United States v. Catalano, 281 F.2d 184 (2d Cir.), cert. denied, 364 U.S. 845, 81 S.Ct. 88, 5 L.Ed.2d 69 (1960).

5. At the suppression hearing Cassino testified that he had no knowledge of a conversation between Dalli and Simmons on the wiretap. His affidavit now indicates that he knew of the September 7th conversation between Dalli and Simmons intercepted on the Beauty Trail Hair Parlor phone and that he knew of still another conversation between Dalli and Simmons that he alleges was intercepted on Dalli's phone.

6. Subsequent to his testimony at the 1969 suppression hearing, Cassino was convicted of aiding a racketeering enterprise in violation of 18 U.S.C. § 1952 and sentenced to a federal penitentiary. Although this fact, as well as Cassino's long silence on this wiretap point and his motive now to testify falsely, would not standing alone justify the denial of a hearing, the district judge was entitled to take these circumstances into consideration in deciding whether evidence requiring a hearing had been stated. "The language of the statute [§ 2255] does not strip the district courts of all discretion to exercise their common sense." Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962).