**Walter GRANT, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 76 Civ. 2598.**

United States District Court, S. D. New York.

March 7, 1978.

Henry J. Boitel, New York City, for petitioner.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, by Richard D. Weinberg, Asst. U. S. Atty., New York City, for the Government.

## OPINION

FREDERICK van PELT BRYAN, Senior District Judge:

In 1973, after a six-week jury trial before me, petitioner Walter Grant and nine other defendants were convicted of violating the federal narcotics laws, 21 U.S.C. §§ 843(b), 846, 848.[1] The convictions were affirmed in *United States v. Sisca,* 503 F.2d 1337 (2d Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). Grant and five of his codefendants, Willie Abraham, Robert Hoke, Erroll Holder, Margaret Logan and Alphonse Sisca, retained the law firm of Lenefsky, Gallina, Mass, Berne & Hoffman (the Gallina firm) to represent them at trial. Three years later, Grant moved, under 28 U.S.C. § 2255, to vacate his conviction on the ground that he was deprived of the effective assistance of counsel guaranteed by the sixth amendment.

Lead counsel for the Gallina firm was Gino Gallina, though several other lawyers in the office were actively involved in the case from the start. While the firm generally represented all six defendants during pretrial proceedings, for purposes of trial, the lawyers working on the case were individually assigned to represent various defendants. Jeffrey Hoffman, a member of the Gallina firm, was assigned to Grant.[2]

At trial the Government introduced overwhelming evidence of Grant's participation in a large-scale narcotics conspiracy which was doing $5,000,000 of business distributing 200 kilos of heroin a year.[3] Grant was arrested on December 15, 1971, after he and two of his coconspirators left the home of codefendant Robert Hoke where they had been dividing up their latest shipment of heroin. When Grant was arrested, he had 2 kilos of heroin in his possession. A search of his home later that day revealed a large quantity of mannite, a dilutant for cutting heroin, in the basement and another bag of mannite in the kitchen. Prior to his arrest, Grant was observed meeting with his coconspirators, particularly Willie Abraham who headed the conspiracy, on several occasions.

The Government also introduced in evidence tapes of three phone calls on November 11, 13 and 14, 1971, in which Grant asked Abraham for "help" in getting more heroin when one of the biweekly shipments was late.[4] The alleged ineffectiveness of defense counsel is based entirely on the untimeliness of the Gallina firm's motion to suppress these tapes for failure of the monitoring agents to minimize their interception of innocent conversations. 18 U.S.C. § 2518(5) (1970); New York Criminal Procedure Law § 700.30(7) (McKinney 1971).

The minimization argument was not put before the court until five days after the trial commenced when John Pollok, an associate in the Gallina firm assigned to represent the defendant E. Holder, suggested it (Transcript at 749). The following day, January 24, 1972, Pollok formally moved to suppress for failure to minimize and the

---

1. Grant was found guilty of conspiracy to violate the narcotics laws, 21 U.S.C. § 848 (count one), and use of a telephone to further the conspiracy, 21 U.S.C. § 843(b) (count three). I sentenced Grant to consecutive terms of fifteen years on count one and four years on count three with five years of special parole. On motion, I reduced his sentence to twelve years on count one and four years on count three, to run concurrently, plus four years of special parole.

   Defendants Abraham, Brown, Ellington, C. Holder, E. Holder, Logan and McBride were also found guilty under counts one and three. In addition, Abraham was found guilty of engaging in a continuing criminal enterprise involving hard narcotics (count two). Sisca and Hoke were found guilty of the conspiracy charge (count one) only.

   Of the eight other defendants named in the indictment, motions for judgments of acquittal were granted as to four, three were fugitives at the time of trial and the case against one defendant was severed.

2. Henry J. Boitel, Esq., who was not a member of the Gallina firm, represented Grant both on his direct appeal and in his efforts to secure § 2255 relief.

3. For a detailed review of the evidence, see *United States v. Sisca, supra,* 503 F.2d at 1339–1342.

4. The Government played tapes of thirty-nine other conversations between various conspirators for the jury, though Grant was not a party to any of these.

other defendants who had participated in the taped conversations, including Grant, joined that motion. I reserved decision until after the jury verdict.

After a post-trial hearing, I denied the motion to suppress on the ground that the motion was required to be made before trial and therefore the defendants had waived the right to so move. *United States v. Sisca*, 361 F.Supp. 735, 738–41 (S.D.N.Y. 1973). In addition, I held that the defendants were only entitled to suppression of innocent conversations which the agents would not have heard had they followed the minimization directive. 361 F.Supp. at 745–48.

On appeal, the Second Circuit affirmed the convictions, upholding my denial of the minimization motion on the waiver issue, *United States v. Sisca*, 503 F.2d 1337, 1346–1349 (2d Cir.), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974), without reaching the issue of the remedy for failure to minimize. *Id.* at 1347. The court of appeals stated:

We affirm the district court's denial of the motions to suppress . . . on the ground that appellants waived their right to challenge the admissibility of wiretap evidence by deliberately refusing to raise the failure to minimize claim in a pretrial motion. Appellants knew of the alleged failure to minimize at least three weeks prior to trial. Indeed, they themselves brought to the attention of the court the facts on which such a motion could have been made, had their trial strategy called for it. Despite a clear direction from the court, however, they made no pretrial minimization motion.

503 F.2d at 1347–48. Continuing, the court said:

We will not countenance such deliberate and subtly disruptive tactics as those employed here. They would unnecessarily obfuscate the issues, confuse the jury and otherwise interfere with the judicial process. . . . [W]e reject, as did the district court, appellant's contention that the finding of waiver here is inconsistent with the view that courts should "indulge

every reasonable presumption against waiver of fundamental constitutional rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461] (1938). We hold that appellants, by ignoring the district court's explicit directive to make their minimization motions before trial, elected to pursue a strategy of intentional relinquishment of a known right and the deliberate by-pass of the orderly and timely suppression procedure provided by Section 2518(10)(a). In doing so, they waived their right thereafter to challenge the admissibility of the wiretap evidence.

503 F.2d at 1349.

In March, 1976, two of Grant's codefendants who had been represented by the Gallina firm, Willie Abraham and Erroll Holder, filed motions pursuant to 28 U.S.C. § 2255 to vacate their convictions on the ground that they had been denied the effective assistance of counsel at trial by their joint representation by one law firm. They claimed that in representing several codefendants, the Gallina firm was hampered by a conflict of interest which was prejudicial because counsel failed to file the minimization motion in timely fashion. Abraham and Holder contended that the Gallina firm deliberately delayed raising the minimization argument in timely fashion because the tapes, although damaging to them, would exculpate their codefendant Sisca. Petitioners also claimed that they should have had outside counsel to advise them on the conflict of interest problem.

The motions of Abraham and Holder were assigned to Judge Bonsal who held an evidentiary hearing on May 25, 1976. After that hearing, on June 14, 1976, Grant and Robert Hoke filed similar § 2255 motions seeking to vacate their convictions on the same conflict of interest ground. Their cases were also assigned to Judge Bonsal. Finding the evidence at the May 25 hearing applicable to the issues raised by Hoke and Grant, Judge Bonsal felt it unnecessary to hold a further hearing and considered all four cases together.

In *Abraham v. United States*, 426 F.Supp. 53 (S.D.N.Y.1976), Judge Bonsal denied all

four motions. After a thorough review of the record with respect to the conflict of interest issue, he found that the trial court held a pretrial hearing on November 22, 1972, in which the conflict of interest possibility was fully explained to each of the defendants and each was advised of his rights; after being questioned individually by the trial judge, each of them knowingly and voluntarily elected to be represented by the Gallina firm despite their awareness of the dangers of a conflict of interest. As for the alleged prejudice arising from the Gallina firm's untimely filing of the minimization motion, Judge Bonsal dismissed this as "a deliberate trial tactic." 426 F.Supp. at 57.

The petitioners appealed. On January 21, 1977, in a *per curiam* opinion, the court of appeals affirmed the denial of the Holder and Abraham motions. *Abraham v. United States*, 549 F.2d 236 (2d Cir. 1977). The court held that they had knowingly and voluntarily elected to continue with their joint representation by the Gallina firm after being advised of the dangers of doing so and given a full opportunity to express their views. Furthermore, the court stated:

> [T]he appellants present us with no convincing evidence of prejudice from their joint representation. The complex scenario they relate, based upon allegations that the lead counsel wished only to secure an acquittal for Sisca, is wholly devoid of any basis in objective fact . . . .

549 F.2d at 239.

However, since Grant and Hoke had filed their petitions too late to be included in the May 25 evidentiary hearing before Judge Bonsal, the court of appeals thought that they should be given an opportunity to demonstrate that their claims differed from those of Abraham and Grant. The court directed the district court to accept an offer of proof from Grant and Hoke so that the district court could determine whether any new facts were being offered that would warrant a hearing. 549 F.2d at 239.

On May 25, 1977, Grant filed a motion with supporting affidavits seeking an evidentiary hearing in accord with the order of the court of appeals. His motion reasserted the conflict of interest claim. It also raised a claim of ineffective assistance of counsel, based on the same underlying set of facts alleged earlier, i. e., the failure to make the minimization motion in timely fashion. Grant's motion was initially referred to Judge Bonsal. However, since Judge Bonsal felt there was nothing new offered on the conflict of interest question, he referred Grant's motions to me (as the trial judge) to deal with the ineffectiveness of counsel claim.[5]

In my view, Grant's motion papers seeking an evidentiary hearing after the remand from the court of appeals merely restated the arguments of Abraham and Holder from a slightly different legal angle. Nevertheless, out of perhaps an overabundance of caution, in order to insure that the petitioner received a full opportunity to air his claims, *see Dalli v. United States*, 491 F.2d 758 (2d Cir. 1974); *United States v. Miranda*, 437 F.2d 1255 (2d Cir. 1971), *cert. denied*, 409 U.S. 874, 93 S.Ct. 207, 34 L.Ed.2d 126 (1972), I granted his motion and held an evidentiary hearing.

Based on the evidence presented at the hearing before me and at the prior hearing before Judge Bonsal and after reviewing the record of the trial, I find no merit in petitioner's claim. The hearing confirmed my view that Grant's arguments are in essence the same as the claims considered and rejected in *Abraham v. United States*, 426 F.Supp. 53 (S.D.N.Y.1976), *aff'd*, 549 F.2d 236 (2d Cir. 1977).

Grant maintains that his motion differs from those of Abraham and Holder because he is claiming ineffective assistance of counsel rather than conflict of interest. The two claims overlap. Conflict of interest is but one source of ineffectiveness. Once one knowingly and voluntarily accepts joint representation, the right to complain

---

5. Judge Bonsal also referred Robert Hoke's case to me. To date, no papers have been submitted by Hoke since the Second Circuit's opinion in *Abraham v. United States, supra.* I have been informed that Hoke was paroled late last year.

of any ineffectiveness arising from it is waived. *See United States v. Armedo-Sarmiento*, 524 F.2d 591 (2d Cir. 1975); *United States v. Garcia*, 517 F.2d 272, 275–77 (5th Cir. 1975). *See also Kaplan v. Bombard*, 573 F.2d 708, 713–714 (2d Cir. February 15, 1978); *United States v. Bubar*, 567 F.2d 192, 201–204 (2d Cir. 1977). *But cf. United States v. Garafola*, 428 F.Supp. 620 (D.N.J.1977).[6]

Factually, Grant's present claim is based on the same complaint previously made about the Gallina firm's failure to file the minimization motion in timely fashion.[7] The evidence presented by Grant at the hearing before me was substantially the same as that presented to Judge Bonsal by Abraham and Holder. Grant's motion must be disposed of in similar fashion.

■ By framing his arguments in terms of ineffective assistance rather than conflict of interest, petitioner does not gain the advantage of a body of legal principles more favorable to his position. Ineffectiveness of representation claims in this circuit are tested by the strict "mockery-of-justice" standard. *LiPuma v. Commissioner*, 560 F.2d 84, 90–91 (2d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977), a standard articulated in *United States v. Wight*, 176 F.2d 376 (2d Cir. 1949), *cert. denied*, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). In *Wight*, the court stated that an ineffectiveness claim will not be upheld "unless the purported representation by counsel was such as to make the trial a farce and a mockery of justice. . . ." 176 F.2d at 379. The Tenth Circuit also follows the "mockery-of-justice" test. *See United States v. Dingle*, 546 F.2d 1378, 1385 (10th Cir. 1976) ("The rule is alive and well in this circuit.").

Other circuits, which at one time adhered to the "mockery-of-justice" test, have since shifted to more liberal standards for determining the effectiveness of representation such as whether the defendant received "reasonably effective assistance" of counsel, *Cooper v. Fitzharris*, 551 F.2d 1162 (9th Cir. 1977); *Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974); *Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974); *United States v. DeCoster*, 159 U.S.App.D.C. 326, 487 F.2d 1197 (1973) (en banc reconsideration after remand pending), or assistance "within the range of competence demanded of attorneys in criminal cases," *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977), or assistance meeting "a minimum standard of professional representation," *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 641 (7th Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975), or assistance up to the level of "customary skill," *United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976); *Moore v. United States*, 432 F.2d 730, 736 (3d Cir. 1970) (en banc). For a thorough review of the tests for judging ineffectiveness claims, see Note, "Ineffective Representation as a Basis for Relief from Conviction: Principles for Appellate Review," 13 Colum. J.L. & Soc. Prob. 1, 25–53 (1977). Even under one of the more liberal standards, the petitioner here was not deprived of his constitutional right to the effective assistance of counsel.

■ The general test for determining whether assistance is effective, however it is formulated, is supplemented by a number of principles which define the parameters of the right to effective representation. The first rule is that the right to effective representation is not a right to perfect or errorless counsel. *E.g., Rickenbacker v.*

---

**6.** Grant says he never effectively waived his rights on the minimization issue because his lawyers wrongly told him the suppression motion had been filed pretrial. I do not credit his testimony on that point.

**7.** Gallina testified at the hearing before Judge Bonsal that all the defendants except Grant were willing to plead guilty. Petitioner now

suggests that this proves his case was different from all the rest and the conflict of interest as to him more acute. This claim has no merit. A defendant may refuse to plead guilty for any number of reasons. There is no showing that on the underlying facts Grant was in any worse position than his codefendants with regard to a possible conflict of interest.

*Warden*, 550 F.2d 62, 66 (2d Cir. 1976), *cert. denied*, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977); *Williams v. Beto*, 354 F.2d 698, 705 (5th Cir. 1965); *United States v. Garguilo*, 324 F.2d 795, 796 (2d Cir. 1963), *quoting Brubaker v. Dickson*, 310 F.2d 30, 39 (9th Cir. 1962), *cert. denied*, 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143 (1963); *Mackenna v. Ellis*, 280 F.2d 592 (5th Cir. 1960), *order modified*, 289 F.2d 928 (en banc), *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961); *United States ex rel. Williams v. Pennsylvania*, 378 F.Supp. 1295, 1297 (E.D. Pa.1974). In *Moore v. United States*, 432 F.2d 730 (3d Cir. 1970) (en banc), the court explained that:

> A retrospective examination of a lawyer's representation to determine whether it was free from any error would exact a higher measure of competency than the prevailing standard. Perfection is hardly attainable and certainly is not the general rule, especially in professional work where intuitive judgments and spontaneous decisions are often required in varying circumstances. The artistry of the advocate is difficult to judge retrospectively because the elements influencing judgment usually cannot be captured on the record. The kaleidoscopic range of possibilities often seem limitless, and it is proverbial that the finest ideas emerge on the way back from the courthouse. The advocate's work, therefore, is not readily capable of later audit like a bookkeeper's. Of course, not all the activity of the advocate has this highly subjective quality. It is possible to examine the sufficiency of his preparation and the adequacy of his knowledge of the relevant law. Review may disclose failures at the trial. All these are matters which will inform the judgment on a retrospective inquiry whether counsel adequately performed his duty. But since what is required is normal and not exceptional representation, there is room for the realization that it would be difficult to find a case where even the ablest and most experienced trial lawyer would be completely satisfied after a searching re-examination of his conduct of a case.

432 F.2d at 736–37.

As a corollary to the rule that the right to effective assistance is not a right to error-free representation, courts refuse to find a denial of constitutional rights where counsel made what in hindsight appears as an error, but merely an error in a matter of tactics or strategy. *See e. g., United States v. Kearney*, 560 F.2d 1358, 1367–68 (9th Cir. 1977); *Cooper v. Fitzharris*, 551 F.2d 1162–1166 (9th Cir. 1977); *Robinson v. United States*, 448 F.2d 1255, 1256 (8th Cir. 1971); *United States v. Rubin*, 433 F.2d 442, 445 (5th Cir. 1970), *cert. denied*, 401 U.S. 945, 91 S.Ct. 961, 28 L.Ed.2d 228 (1971); *Henderson v. Cardwell*, 426 F.2d 150, 153 (6th Cir. 1970); *Morgan v. United States*, 295 F.Supp. 967, 972 (D.Conn.1968). In *Alfano v. United States*, 555 F.2d 1128, 1131 (2d Cir. 1977), a case involving a failure by counsel to raise the issue of delay in obtaining an order to seal a wiretap, the court commented that counsel's error was "at most a classic example of 'ineffectiveness by hindsight,' which should not afford a basis for collateral relief. *See, e. g.*, Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142 (1970)."

Petitioner treats the failure to file the minimization motion in timely fashion as the linchpin of his defense and the only relevant factor in an evaluation of the effectiveness of his defense counsel. He ignores the vigorous efforts by defense counsel on his behalf including the filing of motions to suppress on numerous other grounds. He does not question, as he cannot, that defense counsel was aware of the minimization issue and prepared to deal with it. Even without the three tapes on which Grant's voice was briefly heard, the Government had overwhelming evidence of Grant's guilt. In these circumstances, the delay in filing the motion did not deprive petitioner of his right to effective assistance.

I observed the efforts of the Gallina firm on Grant's behalf at trial, and I do not

consider their performance ineffective under any standard. On the contrary, petitioner received active and thorough representation from defense counsel of a quality well above that required by the sixth amendment. The failure to raise the minimization question in timely fashion, though it may, in retrospect, have been an error on counsel's part, does not taint counsel's entire performance as ineffective.[8] *See Johnson v. United States,* 506 F.2d 640, 646 (8th Cir. 1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1404, 43 L.Ed.2d 659 (1975); *United States v. Katz,* 425 F.2d 928, 930 (2d Cir. 1970); *Slawek v. United States,* 413 F.2d 957, 958 (8th Cir. 1969); *United States ex rel. Cooper v. Reincke,* 333 F.2d 608, 614 (2d Cir.), *cert. denied,* 379 U.S. 909, 85 S.Ct. 205, 13 L.Ed.2d 181 (1964); *United States v. Garguilo,* 324 F.2d 795, 797 (2d Cir. 1963); *Wolfe v. Nash,* 313 F.2d 393, 401 (8th Cir.), *cert. denied,* 374 U.S. 817, 83 S.Ct. 1713, 10 L.Ed.2d 1041 (1963); *Mitchell v. United States,* 104 U.S.App.D.C. 57, 61, 259 F.2d 787, 792 *cert. denied,* 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958).

Prior to trial I held eight conferences and hearings to dispose of various motions and issues. The Gallina firm made numerous efforts to suppress the tapes. Although the minimization argument was not made until after the trial commenced, defense counsel was prepared for the issue. John Pollok, an associate in the Gallina firm who was called as a witness by petitioner at the hearing before me, said that he first researched the minimization issue in late November or early December and thereafter drafted a motion to suppress which he gave to Gallina. The untimely filing of the minimization motion was, at most, a tactical error which does not amount to a violation of the sixth amendment.

Moreover, although in a few courts a finding that defense counsel's performance was below the constitutional minimum requires reversal without any inquiry into the actual consequences of the error, *see Cooper v. Fitzharris,* 551 F.2d 1162 (9th Cir. 1977);

*Beasley v. United States,* 491 F.2d 687, 696–97 (6th Cir. 1974), the Second Circuit does not follow such an extreme approach. *See e. g., United States v. Katz,* 425 F.2d 928, 930 (2d Cir. 1970). *See also McQueen v. Swenson,* 498 F.2d 207 (8th Cir. 1974); *United States ex rel. Green v. Rundle,* 434 F.2d 1112, 1115 (3d Cir. 1970); *Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir.), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968); Note, 13 Colum. J.L. & Soc. Prob., *supra,* at 71–87; Note, Ineffective Assistance and the Harmless Error Rule; The Eighth Circuit Abandons *Chapman,* 43 Geo.Wash.L.Rev. 1384 (1975). Here the Government's case against Grant was overwhelming even without the tapes.

Grant has already had two opportunities to air his claims about the three tapes which were not suppressed, once on his direct appeal and again in the proceedings on his original § 2255 motion before Judge Bonsal and the Second Circuit. Although he urged that he could offer a new argument this time, he was not able to back up that contention with any persuasive evidence. His motion is therefore denied in all respect.

IT IS SO ORDERED.

---

**8.** In defense counsel's behalf, it should be pointed out that at the time of Grant's trial there were no cases construing the time limits for filing minimization motions.