**UNITED STATES of America,**

v.

**Joseph MANFREDI, Defendant.**

**No. 72 Cr. 810.**

United States District Court,
S. D. New York.

March 17, 1978.

Robert B. Fiske, Jr., U.S. Atty., S.D.N.Y., New York City, for United States; Robert N. Shwartz, Asst. U.S. Atty., of counsel.

Miles Feinstein, Passaic, N.J., for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

This is the not unusual situation where a defendant who pled guilty and testified as a government witness recants his trial testimony against a codefendant who was convicted. As is often the case, the recantation occurs only after the statute of limitations on perjury bars any prosecution based upon his trial testimony.

Based upon the recantation, the convicted defendant, Joseph Manfredi, now moves, more than five years after his conviction following a month long trial, "to set aside the verdict" on the ground that the prosecution knowingly used perjured testimony, and for "a new trial on the ground of newly discovered evidence." [1]

Horace Marble, the witness, was indicted with Joseph Manfredi and twelve other defendants as members of a conspiracy to violate the narcotics laws, which was described by our Court of Appeals as "a large-scale narcotics ring from suburban New York and New Jersey which supplied dealers and distributors in Harlem." [2] Prior to his appearance as a government witness at the trial of petitioner, Marble was interviewed at various times by former Assistant United States Attorneys John M. Walker, Jr. and Gerald A. Feffer and Special Narcotics Agent Francis E. White. Marble also testified before a grand jury. During these pretrial proceedings he gave information as to his illicit activities and those of other alleged participants.

---

1. The defendant's motion papers are so styled. However, more than 2 years have elapsed since the entry of the final judgment of conviction. Thus, apart from the fact that the present claim is not newly discovered evidence, see *United States v. Meyers,* 484 F.2d 113, 116 (3d Cir. 1973), the motion is precluded under Rule 33 of the Federal Rules of Criminal Procedure. The Court, since it has reviewed the entire record, accordingly treats petitioner's application as one made under 28 U.S.C. § 2255.

2. *United States v. Manfredi,* 488 F.2d 588, 590 (2d Cir. 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974). The case was tried before Judge Tyler and, following his recommendation, post-conviction matters arising out of the case were assigned to this Court. *See Yanni v. United States,* 420 F.Supp. 990 (S.D.N.Y.1976), *aff'd without opinion,* 556 F.2d 563 (2d Cir. 1977); *Yanni v. United States,* 441 F.Supp. 1280 (S.D.N.Y.1977), *aff'd without opinion,* 573 F.2d 1300 (2d Cir. 1978).

Upon the trial, consistent with his prior statements and grand jury testimony, Marble admitted he was a large-scale narcotics dealer with a criminal record, which included narcotics, robbery, assault and petty larceny convictions and numerous arrests on an assortment of charges. He testified that over a substantial period he had purchased large amounts of heroin from Joseph LaCosa, a defendant and a nephew of Joseph Manfredi, the movant. These purchases eventually were at the rate of two kilos of heroin weekly, with the total sales in excess of one million dollars. Of particular importance on this application is Marble's testimony that on a number of occasions LaCosa made known to him that the source of his (LaCosa's) supply was his uncle, Joseph Manfredi.

Robert Roseboro, another codefendant, also pled guilty and was a government witness. Roseboro testified that he, too, was a large-scale purchaser of heroin from LaCosa, who told him that his uncle was his boss and the supplier of the heroin. In addition to Marble's and Roseboro's testimony, there was independent circumstantial evidence to establish Manfredi's role in the conspiracy. This included surveillance by narcotics agents of LaCosa and Manfredi and various trips by LaCosa to Manfredi's home in New Jersey, which followed or preceded telephone calls wherein LaCosa discussed with other conspirators "his connection." The Court of Appeals held that Marble's and Roseboro's testimony confirmed the circumstantial events relating to Manfredi, and further that the statements made by LaCosa to them "were made in furtherance of the conspiracy, since LaCosa was obviously trying to impress his customers with the importance, connections, wealth and power of his uncle in order to build sound 'customer relations.' " [3]

In support of the instant motion, the petitioner, Joseph Manfredi, relies upon an affidavit of Horace Marble, presently confined to Federal Correctional Institution at Sandstone, Minnesota, in which Marble states:

At no time did Joey [LaCosa] tell me his connection was his uncil [sic] and the first time I heard of a uncil [sic] was from [Narcotics] Agent White. I have never in fact met or heard of Joey's uncil [sic] in till [sic] Agent White told me of him when I first told White my statement he kept coming up with this uncil [sic] and without telling in words he made it knowen [sic] to me it were this uncil [sic] (word) he wanted in my statement and because I felt at that time this was the only thing that would help me. I used the word uncil [sic]. So I now state that at the triel [sic] I did lie in my testamony [sic] when I had said Joey told me his uncil [sic] was his connection . . . . .

The petitioner also submits an affidavit of a private investigator employed by his present counsel (not his trial counsel) to the effect that in an interview of LaCosa at a federal penitentiary LaCosa (who did not testify at the trial) denied that he ever told Marble or Roseboro that his uncle, Manfredi, was the connection or the boss of the narcotics operation. The investigator also reports that one Arthur Michael Newman, not otherwise identified, told him and the lawyer representing defendant on this motion that Roseboro admitted to him he lied at the trial about Manfredi's involvement. Further, the investigator states that during the course of a recorded telephone conversation, Roseboro told him, the investigator, that Manfredi had absolutely nothing to do with the narcotics conspiracy. Hearsay affidavits even further removed are submitted by two fellow prisoners, who state that Roseboro told them that he lied at the trial when he testified against Manfredi and that he and Marble had been propositioned by Agent White to say that Joey LaCosa told them that his uncle was the connection for the heroin in return for leniency upon sentencing.

3. *United States v. Manfredi*, 488 F.2d 588, 596 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974).

The government, in opposition to this motion, has submitted an affidavit from Agent White in which he categorically denies that he ever directed Marble or Roseboro to testify that LaCosa had said his uncle was his heroin connection. Walker, the former Assistant United States Attorney, who questioned Marble on many occasions in preparation for trial, has submitted an affidavit in which he states that Marble "was consistent in stating that LaCosa told him during the time of the conspiracy that LaCosa's 'uncle' was his heroin connection." He and former Assistant United States Attorney Feffer further swear that in advance of trial Roseboro made similar statements. These Assistants and Agent White also aver that to the best of their knowledge Marble and Roseboro testified truthfully at the trial. Additionally, the government has submitted the 3500 material which was furnished during the trial to counsel for the defendants.[4]

■ The immediate issue is whether the recanting statement of Horace Marble upon the record requires a hearing pursuant to 28 U.S.C., section 2255. The motion itself does not automatically mandate a hearing.[5]

■ Significantly, the hearsay statements of the private investigator as to what Roseboro allegedly told him during the course of the recorded telephone conversation is not submitted; neither is the recording offered. Nor is an affidavit submitted from either Roseboro or LaCosa supporting the hearsay statements of the private investigator and fellow prisoners. The hearsay and double hearsay statements are incompetent and inadmissible and will not be considered on this motion.[6] Thus the sole affidavit to be considered as to whether or not a hearing is mandated is that of Marble. The denials in the affidavits of the Assistant United States Attorneys and Agent White are not deemed part of the records and files of this case, but they may be considered as showing that petitioner's factual allegations are "not to be deemed admitted for the purpose of determining whether a hearing should be had";[7] they may also "be considered in assessing the sufficiency of the petitioner's supporting affidavit."[8] Moreover, the 3500 material[9] is part of "the files and records of the case" under section 2255.

■ Based upon all relevant documents and the files and records of this case, I am of the view that Horace Marble's affidavit by itself, which should be viewed with suspicion,[10] is insufficient to mandate a hearing to consider petitioner's claim. Otherwise, we may as well recognize that an unsupported retraction by a witness of his trial testimony would automatically give him, if confined, as well as his codefend-

---

4. Government Exhibit 3502, which is undated, records Marble's statements to Special Agent White in which he states, among other matters, that LaCosa told him "that his source of supply was his Uncle." Government Exhibit 3503 is the witness interview sheet made by Assistant United States Attorney Walker on August 1, 1972, which sets forth Marble's anticipated trial testimony and includes the statement "Joey [LaCosa] spoke to me about his uncle who was his connection." Government Exhibit 3504, dated June 29, 1972, is Marble's grand jury testimony in which he swears that Joey LaCosa told him his uncle was his source of supply and that LaCosa talked freely about his uncle.

5. Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977).

6. See United States v. Franzese, 525 F.2d 27, 31 (2d Cir. 1975); Dalli v. United States, 491 F.2d 758, 760–61 (2d Cir. 1974).

7. United States v. Salerno, 290 F.2d 105, 106 (2d Cir. 1961) (per curiam).

8. Dalli v. United States, 491 F.2d 758, 762 n. 4 (2d Cir. 1974); see United States v. Franzese, 525 F.2d 27, 31 (2d Cir. 1975).

9. See note 4 supra.

10. United States ex rel. Rice v. Vincent, 491 F.2d 1326, 1331–32 (2d Cir.), cert. denied, 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974); United States v. Johnson, 487 F.2d 1278 (4th Cir. 1973) (per curiam); Newman v. United States, 238 F.2d 861, 862 n. 1 (5th Cir. 1956); Harrison v. United States, 7 F.2d 259, 262 (2d Cir. 1925) (L. Hand, J.) ("It is quite true that such [recantation] testimony is for obvious reasons looked upon with the utmost suspicion . . . .")

ants, a free trip to the courthouse[11] every time such a general allegation is made. Section 2255 "does not strip the district courts of all discretion to exercise their common sense."[12]

▮ Petitioner's basic contention is that his conviction was the product of the prosecution's knowing use of Marble's alleged perjured trial testimony. Yet close analysis of Marble's affidavit indicates that it makes no allegation to support such a charge, nor is any proof tendered to support it. In order to require a hearing, an affidavit must set forth specific facts which petitioner can establish by competent evidence.[13] Marble's affidavit is fatally deficient in this respect.

First, Marble makes no charge against—indeed he does not ever refer to—the Assistant United States Attorneys who interviewed him in advance of trial with respect to his prospective testimony, questioned him before the grand jury and prosecuted the case against defendant and the other defendants. The 3500 material consisting of the interviews and Marble's grand jury testimony reveals that on each of those occasions he unequivocally stated that LaCosa told him that LaCosa's uncle, Manfredi, was the connection and the supplier of the heroin.

Marble's recanting affidavit does mention Agent White. Yet, significantly, Marble does not state that he ever told White anything different from what is recorded in the interview reports, the grand jury or his trial testimony as to what LaCosa told him about his uncle. He does not say that White ever induced him to lie or to give false testimony about LaCosa's uncle. What he does say is that

I have never in fact met or heard of Joey's uncil [sic] in till [sic] Agent White told me of him when I first told White my statement he kept coming up with this uncil [sic] and without telling in words he made it knowen [sic] to me it were this uncil [sic] (word) he wanted in my statement and because I felt at that time this was the only thing that would help me I used the word uncil [sic].

Marble's affidavit does not state what White purportedly said or did, nor the circumstances whereby White "made it known" to him that the uncle's name was to be included by Marble in his statements or trial testimony. The most that can be drawn from Marble's retracting affidavit is that he, on his own, believed it would be helpful to him if he so testified. There is not the slightest proof offered that White knew or was ever told by Marble or any other person that Marble's statements about LaCosa and his uncle as the supplier were not the fact. Thus, assuming arguendo, as Marble now asserts, that he testified falsely as to these matters upon the trial, there is no showing that White or any member of the prosecution staff knew that to be so.

In sum, upon the papers here presented, there is no showing to support the charge that petitioner's conviction was obtained through the knowing and intentional use of perjured testimony by government agents. Marble's mere assertion five years after his trial testimony that he lied when he testified that LaCosa had told him his uncle was his connection—even were we to accept its verity despite his many pretrial statements and grand jury testimony which are consistent with his trial testimony—does not require a hearing.[14]

The motion of petitioner is denied in all respects.

11. Cf. United States ex rel. Delcambre v. Fitzpatrick, 268 F.Supp. 941, 942 (S.D.N.Y. 1969).

12. Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); see Newfield v. United States, 565 F.2d 203, 207–08 (2d Cir. 1977).

13. See Dalli v. United States, 491 F.2d 758, 760–61 (2d Cir. 1974).

14. See Dalli v. United States, 491 F.2d 758, 760 (2d Cir. 1974) (district court "is well within [its] discretion in denying a petition when the supporting affidavit is insufficient on its face to warrant a hearing"); Accardi v. United States, 379 F.2d 312 (2d Cir. 1967) (per curiam).