FILED
United States Court of Appeals
Tenth Circuit

April 2, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHN TUAKALAU,

Defendant - Appellant.

No. 12-4052
(D.C. Nos. 2:12-CV-00046-TC &
2:08-CR-00431-TC-4)
(D. Utah)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **BRISCOE**, Chief Judge, **McKAY** and **O'BRIEN**, Circuit Judges.

John Tuakalau, a federal prisoner, wants to appeal from the denial of his 28 U.S.C. § 2255 motion. Because the propriety of the denial is not reasonably debatable we deny his request for a Certificate of Appealability (COA).

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

In July 2008, a federal grand jury indicted Tuakalau and other codefendants on multiple counts of robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and multiple counts of use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). Case No. 2:08-cr-431 ("CR-431"). In October 2008, under a plea agreement reached with the government, Tuakalau pled guilty to four counts of Hobbs Act robberies and one count of use of a firearm during a crime of violence. Among other things, the agreement contained several conspicuous and significant provisions: 1) many charges against Tuakalau would be dropped; 2) he would be guaranteed a thirty-year sentence[1]; and 3) he would waive his right to appeal from the judgment and sentence or collaterally attack it. The district court accepted the plea agreement and, as agreed, sentenced Tuakalau to thirty years' imprisonment, to be followed by five years of supervised release. The government dismissed the remaining charges.

Nearly two years later, in May 2010, Tuakalau was charged with conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). Case No. 2:08-cr-758 ("CR-758"). Some of the predicate acts alleged in the RICO indictment were based upon the same facts underlying charges to which he had pled guilty in CR-431. Tuakalau moved to dismiss the RICO indictment in

---

[1]     His pleas would be entered under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, guaranteeing the agreed sentence if the agreement was accepted by the judge.

CR-758, claiming, inter alia, double jeopardy, and to withdraw his guilty plea in CR-431. In November 2011, the government moved to dismiss the RICO charge; it was dismissed in June 2012. But Tuakalau still insisted on withdrawing his guilty plea in CR-431. The district judge directed him to refile the motion to withdraw as a § 2255 motion.

He did so in January 2012, alleging ineffective assistance of counsel ("IAC"), government breach of the plea agreement (by instituting the RICO prosecution), and a double jeopardy violation. On October 19, 2012, the judge denied the motion and later denied a requested COA. Tuakalau renewed his request for a COA in this court.

## II.    Discussion

A prisoner seeking a COA must make a "substantial showing of the denial of a constitutional right." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012). He may do so by "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id*. (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When the district court has ruled on the merits of the prisoner's claims, he must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

Tuakalau proposes the following issues in his COA application: 1) the government breached the plea agreement; 2) his guilty plea was involuntary; 3) trial

counsel provided ineffective assistance; and 4) he should have been afforded an evidentiary hearing. We do not consider the involuntary guilty plea claim because it was not properly raised in the district court. We briefly address the other issues.

## A. Breach of the Plea Agreement

A due process violation may arise if the government has breached a plea agreement in a material way. *See*, *e.g.*, *Santobello v. New York*, 404 U.S. 257 (1971); *Gibson v. Klinger*, 232 F.3d 799, 803 (10th Cir. 2000); *United States v. Harvey*, 869 F.2d 1439, 1443 (11th Cir. 1989) ("Due process requires the government to adhere to the terms of any plea bargain or immunity agreement it makes."). As a result of the plea agreement and his plea in CR-431 Tuakalau claims to have reasonably expected the "Government would cease prosecuting him for the charges of conviction and the dismissed charges in the original prosecution." Aplt. Br. at 17. After all, he says, the plea agreement gave no indication of the government's intent to later pursue a RICO prosecution against him and his finality expectations can only be met by permitting him to withdraw his plea.

He faces an insurmountable obstacle: the government did not breach the plea agreement. "General principles of contract law define the government's obligations under the agreement, looking to the express language and construing any ambiguities against the government as the drafter of the agreement." *United States v. Burke*, 633 F.3d 984, 994 (10th Cir. 2011) (internal quotation marks omitted). In determining whether a breach has occurred, "we 1) examine the nature of the

promise; and 2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time of the guilty plea." *Id*. (internal quotation marks omitted).

Tuakalau obtained precisely what he bargained for, dismissal of charges and an agreed sentence. The plea agreement contains no representation by the government regarding future prosecutions. But it does have a clear integration clause−there are no other agreements or arrangements between Tuakalau and the government and no promises other than those stated in the plea agreement have been made−rendering his contrary expectations unreasonable. Nothing in the agreement foreclosed the government from bringing a subsequent RICO charge.

**B. Ineffective Assistance of Counsel**

Tuakalau claims his trial counsel knew the government intended to file future RICO charges against him and those charges would include, as predicate acts, some of the things he was admitting to as a result of the plea agreement or were the basis for dismissed charges. According to Tuakalau, counsel's failure to advise him of the government's intent and the possible ramifications amounted to IAC. In addition, he claims, if he had been armed with full knowledge of the government's intent he would not have pled guilty. Trial counsel denies any knowledge of the government's intent. Tuakalau does not accept counsel's denials, but even if true he claims counsel was still ineffective in failing to anticipate the subsequent RICO charge and explain the possible ramifications to him. According to him, he has been prejudiced by

deficient performance in either event: whether counsel knew of the government's intent or failed to anticipate it, he has had to deal with the stress, trauma, and notoriety of enduring a RICO prosecution, and has faced danger in returning to federal prison after dismissal of the RICO charge.

To establish a claim of IAC, Tuakalau must show how "counsel's representation fell below an objective standard of reasonableness" and he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To show prejudice in the guilty plea context he must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), and "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). Failure to show either deficient performance or prejudice is dispositive. *See Hooks v. Workman*, 606 F.3d 715, 724 (10th Cir. 2010).

As to the first prong the judge concluded trial counsel was not deficient in his performance. Her conclusion was based on an affidavit in which trial counsel stated he received no indication from the government of any intent to file a RICO charge against Tuakalau.[2] She did not address whether trial counsel should have, despite his

---

[2] Tuakalau claims a factual dispute exists as to whether the government advised trial counsel of its intent to file RICO charges, making an evidentiary hearing necessary. He is mistaken. Although his § 2255 counsel represented to the court that she possessed e-mail communications from government counsel documenting the

(continued)

lack of explicit warning, anticipated the possibility of RICO charges and was deficient for failing to timely warn Tuakalau of that possibility. Because there is no valid reason to quarrel with her conclusion about trial counsel's knowledge, we move to the "should have anticipated" argument.[3]

The Sixth Amendment right to counsel does not encompasses every aspect of the attorney client relationship, only direct aspects of the prosecution. *See Varela v. Kaiser*, 976 F.2d 1357, 1358 (10th Cir. 1992). "Consequences of a guilty plea unrelated to the length and nature of the federal sentence are not direct consequences." *United States v. Hurlich*, 293 F.3d 1223, 1231 (10th Cir. 2002). Neither is the possibility of future RICO charges a direct consequence of a guilty plea. *See United States v. Gonzalez*, 202 F.3d 20, 27 (1st Cir. 2000)*, abrogated on other grounds by Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) ("What renders a plea's effects collateral is not that they arise virtually by operation of law, but the fact that [the consequence] is not the sentence of the court which accepts the plea but of another agency over which the trial judge has no control and for which he has no

_____

claimed factual dispute, she did not submit them in the § 2255 proceeding. Since her unsupported statement to the court is not evidence, *see Luevano v. Holder*, 660 F.3d 1207, 1213 (10th Cir. 2011), there was no evidence of a factual dispute. Aplt. App., Vol. 1, at 141-42. *See also Dalli v. United States*, 491 F.2d 758, 760 (2d Cir. 1974) (in determining whether to grant an evidentiary hearing, mere generalities or hearsay statements normally will not entitle an applicant to a hearing since such hearsay would be inadmissible at the hearing itself).

[3]     It appears the "should have anticipated" issue was raised in the district court, but only summarily.

responsibility.").[4] Trial counsel was not deficient in failing to anticipate a RICO indictment. *See also Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.") (internal quotation marks omitted).

Even were we to assume trial counsel's performance was inadequate under *Strickland*'s first prong, Tuakalau must also satisfy the second prong by showing prejudice. He has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Moya*,

---

[4]     *Padilla* may have called the distinction between direct and collateral consequences into doubt. *See Padilla*, 130 S. Ct. at 1481 (observing that the court has "never applied a distinction between direct and collateral consequences to define the scope of constitutionally reasonable professional assistance required under *Strickland*"). In *Padilla*, the Supreme Court decided counsel was ineffective for failing to advise of the risk of deportation, but did not rely on the direct-collateral distinction because the risk of deportation's close connection to the criminal process made it uniquely difficult to classify as either a direct or collateral consequence. *See id.* at 1481-82. It refrained from deciding whether the distinction between direct and collateral consequences continues to be appropriate in contexts other than deportation consequences. *See id.* at 1481 ("Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation.").

Simply by reading the statute, Padilla's counsel could easily have determined he was eligible for deportation, which was presumptively mandatory. *Id.* at 1483. The situation here is not nearly so tidy. A RICO prosecution is discretionary with the government (not presumptively mandatory) and predicting the government's inclination to do so in any particular case would require much more than simply reading a statute. *Padilla* is neither controlling nor even persuasive as to the issue presented here.

- 8 -

676 F.3d at 1214 (internal quotation marks omitted). Tuakalau was facing a potential minimum mandatory sentence of 185 years imprisonment. We agree with the district judge: rejecting a plea bargain dismissing numerous charges and guaranteeing a thirty-year sentence would not have been rational. *See Padilla*, 130 S. Ct. at 1485.

Tuakalau claims more is at stake than simply comparing a guaranteed sentence to a potentially longer one, even an extremely longer one. He says the risk of conviction is a related but independent consideration. In that regard he claims his confession−the government's strongest evidence in the original prosecution−was constitutionally infirm and could have been suppressed. *See* Aplt. Opening Br. at 21. He suggests his willingness to forego challenging his confession was a result of the favorable plea agreement. Indeed, he did not move to suppress the allegedly infirm confession. But he has not effectively claimed IAC for failing to do so.[5] His rosy predictions of the probable success of a suppression motion are merely speculative.

Finally, to the extent Tuakalau claims prejudice because his plea bargain was not a full resolution of the possible claims against him, we are unpersuaded. The RICO charge was ultimately dismissed and the trial judge regarded the prejudice claimed by Tuakalau–the stress, trauma, and notoriety resulting from the RICO

---

[5]    Tuakalau claimed for the first time in his reply brief in support of his motion for reconsideration that trial counsel's advisement to plead guilty without seeking suppression of Tuakalau's confession constituted IAC. *See* Aplt. App., Vol. 1, at 114. The district court, however, held that such a claim was barred by the statute of limitations under 28 U.S.C. § 2255(f), and declined to consider it. *See id*. at 141 n.24. So do we.

prosecution–not to be the kind of prejudice for which relief is available under § 2255. The cases documenting and explaining prejudice are legion. Yet, Tuakalau has failed to cite any legal authority supporting his position, and we have found none. His burden to show prejudice, *see United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011), must necessarily mean legally significant prejudice. He suffered no punishment, no conviction, not even a trial. More than a tale of woe is required.

### C. Evidentiary Hearing

Tuakalau claims entitlement to an evidentiary hearing regarding his IAC claim based upon trial counsel's knowledge of the government's intent to seek a RICO indictment. *See* footnote 2, *supra*. Under § 2255, the district court is required to conduct an evidentiary hearing "'[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996) (quoting 28 U.S.C. § 2255) (further quotation omitted). "We review the denial of an evidentiary hearing in a § 2255 proceeding for an abuse of discretion." *United States v. Clingman*, 288 F.3d 1183, 1187 n.4 (10th Cir. 2002).

Tuakalau claims to have been denied discovery which would have provided evidence of the factual dispute about trial counsel's knowledge of an impending RICO charge. But no proper request was made. Merely claiming discovery is necessary is insufficient. Tuakalau's § 2255 counsel could have, but did not, make a proper discovery request. Under Rule 6(b) of the Rules Governing Section 2255

Proceedings for the United States District Courts, "[a] party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents." *See also Dalli v. United States*, 491 F.2d 758, 760 (2d Cir. 1974) (in determining whether to grant an evidentiary hearing, mere generalities or hearsay statements normally will not entitle an applicant to a hearing since such hearsay would be inadmissible at the hearing itself).

### III.    Conclusion

The propriety of the district court's resolution of this § 2255 motion is not fairly debatable. Tuakalau's request for a COA is DENIED and his application is dismissed.


Entered for the Court


Terrence L. O'Brien
Circuit Judge