**Frank LOCASCIO, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**Docket No. 03–2485.**

United States Court of Appeals, Second Circuit.

Argued: June 10, 2004.

Decided: Jan. 12, 2005.

Herald Price Fahringer, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, LLP (Erica T. Dubno, on the brief), New York, New York, for Petitioner–Appellant.

Nicolas Bourtin, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, David C. James, Assistant United States Attorney, on the brief), Brooklyn, New York, for Respondent–Appellee.

Before: WALKER, Chief Judge, WINTER, and JACOBS, Circuit Judges.

WINTER, Circuit Judge. ·

Frank LoCascio appeals from Judge Glasser's denial of LoCascio's Section 2255 motion for a writ of habeas corpus. Various claims were raised in the district court, but LoCascio argues on appeal only that he was denied the effective assistance of counsel. This claim is based on an affidavit from one of LoCascio's attorneys stating that LoCascio's trial counsel received death-threats from a co-defendant, John Gotti, warning counsel not to "individualize[ ] the interest of LoCascio at Gotti's expense." The affidavit further states that counsel thereafter conformed his conduct of the trial to Gotti's wishes. The district court held the claim to be procedurally barred and otherwise without merit. We remand for an evidentiary hearing.

## BACKGROUND

We assume familiarity with the criminal prosecution and conviction underlying the present matter. *See United States v. Gotti,* 753 F.Supp. 443 (E.D.N.Y.1990) (bail hearing closed), *reconsideration denied by,* 776 F.Supp. 666 (E.D.N.Y.1991); 771 F.Supp. 552 (E.D.N.Y.1991) (defense attorneys disqualified); 777 F.Supp. 224 (E.D.N.Y.1991) (anonymously selected and sequestered jury ordered); 782 F.Supp. 737 (E.D.N.Y.1992) (defense attorney disqualified); 784 F.Supp. 1013 (E.D.N.Y. 1992) (motion to identify jurors from previous trials denied); 1992 U.S. Dist. LEXIS 11400 (E.D.N.Y. June 24, 1992) (motion to set aside verdict or grant new trial denied), *aff'd sub nom. United States v. LoCascio,* 6 F.3d 924 (2d Cir.1993), *cert. denied sub nom. Gotti v. United States,* 511 U.S. 1070, 114 S.Ct. 1645, 128 L.Ed.2d

365 (1994). Various counsel represented LoCascio and Gotti after their arraignment and before trial. The government successfully moved to disqualify two of Gotti's counsel on the grounds that both were "house counsel" for Gotti and received "benefactor payments" from him to represent others involved in the charged criminal enterprise, the Gambino crime family. *See Gotti,* 771 F.Supp. at 560.

LoCascio was originally represented by David Greenfield. Later, John Mitchell joined Greenfield as co-counsel for LoCascio. Greenfield sought to withdraw but was not permitted to do so because Mitchell was a partner of James LaRossa, a potential government witness, and, as a result, the district court curtailed Mitchell's ability to conduct cross-examination and address the jury. On January 6, 1992, George Santangelo filed a notice of appearance to act as co-counsel for LoCascio. The district court disqualified Santangelo on the same grounds relied upon in disqualifying Gotti's original counsel. *See Gotti,* 782 F.Supp. at 742–43. In support of its disqualification motions, the government relied upon recorded conversations between Gotti and various lawyers demonstrating Gotti's insistence on orchestrating and controlling all legal representation relating to the case against him, including the representation of co-defendants. *See id.* at 739–43.

On January 27, 1992, Anthony Cardinale appeared as counsel for LoCascio, and Greenfield was finally relieved. Cardinale was a Massachusetts lawyer who practiced principally in the Boston area and had no known affiliation with Gotti or the Gambino crime family. However, Cardinale had represented defendants alleged to be engaged in organized crime.

LoCascio was tried and convicted along with Gotti of the murder of Louis DiBono and numerous other crimes of racketeer-

ing by the Gambino family. *See LoCascio,* 6 F.3d at 930. LoCascio was acquitted, however, of one count on which Gotti was found guilty. *Id.* Following this court's affirmance, *id.* at 931, certiorari was denied by the Supreme Court in 1994, *see Gotti,* 511 U.S. at 1070, 114 S.Ct. 1645.

In October 2000, LoCascio filed the instant Section 2255 motion. He was represented by Dennis P. Riordan. The motion alleged, *inter alia,* that LoCascio was not afforded the effective assistance of counsel based on counsel's failure to pursue certain lines of cross-examination allegedly to protect Gotti. Two years later, while the motion was still pending, a motion to amend was filed. The motion was based on the allegations of an affidavit from Thomas Harvey, an attorney who was of counsel to Riordan. The affidavit stated in pertinent part:

> Mr. Cardinale revealed to me that Mr. Gotti threatened to kill him if he individualized the interest of LoCascio at Gotti's expense. As a direct result of Mr. Gotti's threats, Mr. Cardinale, among other things: (i) was prevented by Mr. Gotti from cross-examining Salvatore Gravano concerning Frank LoCascio's lack of involvement in the murder of Louis DiBono, (ii) was threatened to be "taken care of" by Mr. Gotti for asking questions solely about Mr. LoCascio, (iii) was forced by Mr. Gotti to cross-examine witnesses about facts and charges that involved only Mr. Gotti, (iv) and was forced by Mr. Gotti to concentrate on Mr. Gotti during the second part of the summation....

> Mr. Cardinale revealed that after Mr. Gotti learned that Mr. Cardinale met alone with defendant LoCascio, Mr. Gotti stated he would harm Mr. Cardinale if he ever met alone again with Mr. LoCascio. Thereafter, Mr. Cardinale

failed to meet with Mr. LoCascio without Mr. Gotti being present. . . .

Mr. Cardinale never revealed the aforementioned facts to anyone, including Mr. Locascio, and the only reason he is coming forward at this time with the information is that Mr. Gotti's death has lessened the threat to his life, although the threat has not been completely removed.

Although Dennis Riordan, Esq. had interviewed Mr. Cardinale concerning the subject whether [sic] he suffered from a conflict of interest during Lo-Cascio's trial prior to the preparation of both the 2255 motion itself and the Reply Memorandum filed on Mr. Lo-Cascio's behalf in February 2001, Mr. Cardinale did not divulge the instant information and this information was not available to Mr. LoCascio or his present counsel, and is critical to the Court's consideration of the defendant's pending claim of deprivation of his constitutional right to conflict-free counsel.

Mr. Cardinale has declined at this time to allow his declaration in support of this motion to be submitted because he is concerned for his welfare and on advice of his counsel. However, Mr. Cardinale has advised me that if he is compelled to testify, he will testify in accordance with facts in this declaration.

LoCascio also submitted an affidavit stating that Gotti was his co-defendant and that "[a]lthough my co-defendant and I had some issues in common, I at no time agreed that Mr. Cardinale could act in my co-defendant's best interest at my expense." LoCascio's affidavit further stated that:

I at no time was advised, or was otherwise aware, that Mr. Gotti had threatened to kill Mr. Cardinale if he individualized my interests at Mr. Gotti's expense and that, as a result, Mr.

Cardinale was restrained in cross-examining Salvatore Gravano concerning my lack of involvement in the murder of Louis DiBono, or in asking questions solely about me, and was forced to cross-examine witnesses about facts and charges that involved only Mr. Gotti and to concentrate on Mr. Gotti during the second part of Mr. Cardinale's summation.

The district court denied the motion to amend as time-barred and in the alternative found the underlying ineffective assistance claims raised by the affidavit to be without merit. *LoCascio v. United States,* 267 F.Supp.2d 306, 322, 324 (E.D.N.Y. 2003). The court granted a certificate of appealability. On appeal, LoCascio asks principally for a remand for an evidentiary hearing on his ineffective assistance claim.

## DISCUSSION

We "review[ ] factual findings for clear error and questions of law *de novo.*" *Triana v. United States,* 205 F.3d 36, 40 (2d Cir.2000) (internal quotation marks and citation omitted). "The question of whether a defendant's lawyer's representation violates the Sixth Amendment right to effective assistance of counsel is a mixed question of law and fact that is reviewed *de novo.*" *United States v. Blau,* 159 F.3d 68, 74 (2d Cir.1998). However, the district court's denial of a motion to amend a Section 2255 motion is reviewed for abuse of discretion. *See Ching v. United States,* 298 F.3d 174, 180 (2d Cir.2002).

a) *Procedural Bar*

The district court held that LoCascio's ineffective assistance of counsel claim based on the Harvey affidavit was time-barred and therefore denied the motion to amend the Section 2255 petition.

Section 2255 provides that:

[a] 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

＊　＊　＊　＊　＊　＊

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(4). Subsection (4) "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence." *Wims v. United States*, 225 F.3d 186, 190 n. 4 (2d Cir.2000).

The Harvey affidavit stated that Cardinale revealed the threats from Gotti for the first time during the three weeks preceding October 22, 2002—the date on which the affidavit was signed. Denying the motion to amend as time-barred and therefore futile, the district court found that "the 'new evidence' upon which it is based, is not new at all. Gotti's insistence upon controlling the attorneys appearing not only on his behalf, but on behalf of other members of the organized crime family of which he was the boss, was captured on tape in the starkest terms and was known to LoCascio long before this trial began." *LoCascio*, 267 F.Supp.2d at 322.

▮ Although a close call, the present claim involves more in our view than Gotti's general practice of controlling attorneys—in particular those on his payroll. It also may involve more than the joint

defense strategy in the trial, of which LoCascio was aware. The claim here involves allegations that Gotti, without LoCascio's knowledge, interceded directly with trial counsel—who was not from the area or on Gotti's payroll—gained control of LoCascio's defense by threatening to kill counsel, and forbade counsel from meeting alone with LoCascio. Moreover, it is claimed that counsel altered his conduct of the trial in response. There is presently no evidence that LoCascio was aware of the particular death threat alleged, of Gotti's direct orders to counsel, or of counsel's conduct in response. While these facts are not inconsistent with LoCascio's understanding of Gotti's practices, as alleged they go far beyond the previously available information (on this record) on the extent of Gotti's control of defense tactics during the trial.[1]

Moreover, on the present record, the facts as alleged could not have been discovered earlier through due diligence. The Harvey affidavit states that Cardinale disclosed the threat only after Gotti died because of the reduced danger to Cardinale. Further, the affidavit and an accompanying affidavit of Riordan state that Riordan interviewed Cardinale "concerning the subject whether [sic] he suffered from a conflict of interest during LoCascio's trial prior to the preparation of both the 2255 motion itself and the reply memorandum filed on Mr. LoCascio's behalf in February of 2001, I did not receive from

---

1. In this regard, the district court's and the government's reliance on *United States v. Pollard*, 161 F.Supp.2d 1 (D.D.C.2001), is misplaced. The petitioner in that case, who alleged ineffective assistance of counsel based on his attorney's incompetence, had been aware at all pertinent times of his counsel's shortcomings and had argued that he had "discovered" the relevant facts only when advised of the legal consequences of the attorney's mistakes. *Id.* at 9. The court held the

petitioner's claims untimely on the ground that "paragraph four of § 2255 is only triggered when a defendant discovers facts, not the legal consequences of those facts." *Id.* at 10. By contrast, new facts were allegedly discovered in the instant case—i.e., the threats to Cardinale's life, the order to him not to meet alone with LoCascio, and the consequent alteration in counsel's conduct of the trial.

him at those times any of the information contained in Mr. Harvey's declaration or any other information demonstrating a conflict of interest."

Thus, the requirements of Subsection (4) were met as to the discovery of new facts. The motion to amend the Section 2255 motion with an ineffective assistance of counsel claim based on the new facts was not time-barred,[2] and denial of leave to amend was an abuse of discretion.

### b) Ineffective Assistance of Counsel

■ "A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir.2002) (internal quotation marks and citation omitted). Although a defendant is generally required to show prejudice to prevail on an ineffective assistance of counsel claim, "this is not so when counsel is burdened by an actual conflict of interest." *Id.* at 91. Where a defendant shows "(1) an actual conflict of interest that (2) adversely affected his counsel's performance," prejudice is presumed. *Id.; Armienti v. United States*, 234 F.3d 820, 824 (2d Cir.2000); *see also Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). There is an actual conflict between lawyer and client "when, during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir.1993) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356 n. 3, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (Marshall, J., concurring in part and dissenting in part)).

■ To show that such a conflict adversely affected his counsel's performance, LoCascio must establish an "actual lapse in representation" that resulted from the conflict. *Cuyler*, 446 U.S. at 349, 100 S.Ct. 1708. This is a two-part showing. First, LoCascio must demonstrate the existence of some "plausible alternative defense strategy not taken up by counsel." *United States v. Moree*, 220 F.3d 65, 69 (2d Cir. 2000) (internal quotation marks and citations omitted). In this regard LoCascio does not need to show that the alternative defense "would necessarily have been successful." *Id.* (internal quotation marks and citations omitted). It would be sufficient to show that the alternative strategy "possessed sufficient substance to be [ ] viable . . . ." *Id.* (internal quotation marks and citations omitted). Second, LoCascio must show "causation"—i.e., that the alternative defense was "inherently in conflict with or not undertaken emphasized the attorney's other loyalties or interests." *Id.* (internal quotations marks and citations omitted). In other words, he must

---

2. LoCascio claims that the district court had an obligation to inquire into Cardinale's conflict because the court was aware that Gotti desired control over attorneys working on Gambino-related cases. The trial court has an obligation to inquire into the facts and circumstances of an attorney's interests either in response to a timely conflict of interest objection, *Holloway v. Arkansas*, 435 U.S. 475, 484, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), or "when it knows or reasonably should know of the possibility of a conflict of interest," *Strouse v. Leonardo*, 928 F.2d 548, 555 (2d Cir.1991). In fact the district court here disqualified two sets of prior counsel on the government's motion. Both sets of counsel had close ties to Gotti, and the district court found that the attorneys were "house counsel" for the Gambino crime family, which was at that time controlled by Gotti, and that the attorneys received "benefactor payments" from him. In contrast, no evidence suggested Cardinale had any prior contact with Gotti, let alone that he was under Gotti's control. There was thus nothing before the court triggering an obligation to inquire further.

show that "trial counsel chose not to undertake [the alternative strategy] because of his conflict." *Winkler*, 7 F.3d at 309.

On the present record, we believe that an evidentiary hearing needs to be held as to the existence of both the alleged conflict created by the death threat and any resultant lapse in representation reflected by the alleged change in Cardinale's conduct of LoCascio's defense. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall … grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255.

■ With regard to the existence of a conflict of interest, no one would question that a credible death threat from a codefendant ordering a lawyer to sacrifice a client's interests constitutes an actual conflict of interest. However, whether a hearing is required on the present record is a very close question. In determining that issue we look "primarily to the affidavit or other evidence proffered in support of the application in order to determine whether, if the evidence should be offered at a hearing, it would be admissible proof entitling the petitioner to relief." *Dalli v. United States*, 491 F.2d 758, 760 (2d Cir. 1974). In this regard, "[m]ere generalities or hearsay statements will not normally entitle the applicant to a hearing, since such hearsay would be inadmissible at the hearing itself." *Id.* (internal citations omitted). Rather, "[t]he petitioner must set forth specific facts which he is in a position to establish by competent evidence." *Id.* at 761; *see also Hayden v. United States*, 814 F.2d 888, 892 (2d Cir. 1987) (same); *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir.1987) (holding that hearing is appropriate when application contains "assertions of fact that a petition-

er is in a position to establish by competent evidence").

The allegations in the Harvey affidavit concerning Gotti's orders and death threat to Cardinale are entirely hearsay. Similarly, Cardinale's alleged willingness to appear at an evidentiary hearing under subpoena to confirm those allegations under oath is based on hearsay. We do not ignore the fact that this method of presenting the claim allows the various persons involved to avoid stating under oath any personal knowledge of a material fact regarding Gotti's orders and threats. Moreover, the timing—years after the pertinent events—adds to the difficulty of verification. Ordinarily, we would be inclined not to order a hearing, particularly in light of the puzzling inconsistency between Cardinale's fear of submitting his own affidavit and his conversing with Harvey in a way that seems equally dangerous. However, the allegations here, if credited, involve an attempt to subvert the adversary process in a fundamental and criminal manner, and we are assured by an officer of the court that trial counsel has made the statements claimed and will provide testimonial evidence in support. We believe, albeit by a narrow margin, that an evidentiary hearing would best clarify whether that subversion was attempted and succeeded.

Therefore, we direct a hearing with regard to whether Gotti threatened Cardinale as claimed by the Harvey affidavit. Cardinale's live testimony is essential to this claim because, as discussed *infra*, the existence of the threat cannot be reliably inferred from Cardinale's conduct of the trial as reflected in the transcript. Therefore, the factual issue of the existence of orders from Gotti based on a death threat turns on Cardinale's testimony and credibility.

If Cardinale's testimony credibly establishes the death threat and accompanying

orders from Gotti, the hearing must then turn to the question of whether the threat caused the requisite lapse in representation. *Winkler,* 7 F.3d at 309. LoCascio relies upon various portions of the trial record as demonstrating that Cardinale sacrificed his defense because of Gotti's threat. In particular, LoCascio argues that inferences from the record show Gotti's threat to have occurred on March 11, 1992, after Cardinale's first day of cross-examining the government's main witness. According to LoCascio, Cardinale's representation through the afternoon of March 11 was unaffected by the threats, but starting on March 12 LoCascio's individual defense was sacrificed to serve Gotti's interests. The government argues that the record as a whole demonstrates that Cardinale's defense of LoCascio was linked to Gotti from the outset as part of an overall joint defense strategy and any non-individuation of LoCascio was an inevitable product of this strategy.

We have examined the record and find nothing in the transcript alone—without supporting credible testimony from Cardinale—that would support an inference of Cardinale's altering his conduct of the trial because of a death threat. The record does indicate that LoCascio and Gotti engaged in a joint defense at trial to which LoCascio agreed. Indeed, both the district court and this court have made findings in this regard. *See United States v. Gotti,* 171 F.R.D. 19, 34 (E.D.N.Y.1997) (finding that "even the most objective reading of the entire trial record could lead only to the conclusion that there was an implicit, if not an explicit, joint defense attack [by LoCascio and Gotti] mounted against the indictment"); *LoCascio,* 267 F.Supp.2d at 324 (observing that "LoCascio certainly knew of the joint defense"); *United States v. Gotti,* Nos. 97–1228(L), 97–1248, 166 F.3d 1202, 1998 U.S.App. LEXIS 31190, at *4 (2d Cir. Dec. 8, 1998)

(explaining that "LoCascio and Gotti conducted a joint defense at trial, and we have no reason to believe that they were not sharing all information relevant to their defense," and describing the "strategic reasons" why "neither Gotti nor LoCascio sought to examine Gravano on his statements regarding narcotics trafficking").

If the death threat and orders to Cardinale are credibly established, therefore, the hearing must also address whether the threat altered Cardinale's conduct of the trial. A defendant of course is free to pursue a joint defense strategy with a co-defendant, and such a strategy does not create a conflict of interest tainting a trial. *See United States v. Kirsh,* 54 F.3d 1062, 1072 (2d Cir.1995) ("The fact that Joseph and Mara may have decided to pursue a joint defense strategy in which Washburn acted as lead counsel, does not mean that Washburn represented both defendants. Mara failed to show a conflict of interest."). If, independent of the threats, Cardinale's representation followed LoCascio's and Gotti's joint defense strategy and any failure to individuate LoCascio was the result of that strategy, the threats cannot be said to have caused Cardinale to forgo the alternative defense of separating LoCascio from Gotti at trial. *See Winkler v. Keane,* 7 F.3d 304, 309 (2d Cir.1993) ("[T]rial counsel did not pursue a plea bargain because Winkler rejected this path, not because of trial counsel's [conflict of interest]."). In other words, LoCascio cannot now claim a lapse in representation simply because Gotti may have threatened Cardinale to stick to the plan that LoCascio had already agreed upon. In such a circumstance it would have been LoCascio's direction, not Cardinale's conflict, that avoided the alternative plausible defense. However, why Cardinale did or did not do certain things cannot be determined without hearing his live testimony under oath.

## CONCLUSION

For the foregoing reasons, the case is remanded to the district court for an evidentiary hearing.