**Noel RAINFORD, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 09 Civ.1982(BMC).**

United States District Court, E.D. New York.

Aug. 31, 2009.

Noel Rainford, Fort Dix, NJ, Petitioner Pro se.

Paul A. Tuchmann, Assistant U.S. Attorney, for Respondent.

### *MEMORANDUM DECISION AND ORDER*

COGAN, District Judge.

Noel Rainford, *pro se*, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel be-

cause: (1) trial counsel failed to file a notice of appeal as instructed; (2) trial counsel prevented Rainford from testifying on his own behalf; and (3) trial counsel failed to investigate certain matters which could have led to impeachment of the government's witnesses or additional evidence in Rainford's favor. In addition, Rainford argues that he should have received a "downward departure" at sentencing because his status as an alien subjects him to harsher conditions in prison than a U.S. citizen. Rainford also moves for a hearing in connection with his petition.

Rainford was convicted by a jury of six cocaine trafficking charges and sentenced to 120 months imprisonment, the middle of his advisory guideline range. In sentencing him, this Court rejected the government's argument that the guidelines understated his criminal history by failing to take into account his prior Jamaican cocaine trafficking conviction.

For the reasons set forth below, Rainford's application for a writ of habeas corpus is denied, and the petition is dismissed.

## I

The evidence at trial consisted principally of testimony from two cooperating witnesses, Derrick Venzen and Alice Jackson, who had separately made drug runs for Rainford. They testified that they had never met or heard of each other until after their arrests. Each of their testimony was corroborated by extensive documentation.

Venzen was arrested with smuggled cocaine at JFK International Airport. He testified that Rainford had bought his plane tickets for the smuggling attempt; that Rainford had accompanied him to Costa Rica where they had together obtained the cocaine; and that the plan was for Venzen to deliver the cocaine to Rainford once Venzen cleared JFK customs.

The documentation corroborating this included, among other things, flight ticket records showing Rainford and Venzen ticketed on the same date for the same flights to and from Costa Rica, and a customs form filled out by Venzen on the return flight from Costa Rica in which Venzen listed his home address as that of Rainford's former address, where Rainford's parents lived. In addition, Venzen had a flight itinerary from a travel agency at the time of his arrest which also showed this same address as Venzen's home address. The inference that the government asked the jury to draw, which it did, was that Rainford used Venzen as a buffer so that Rainford would not have to carry the cocaine through U.S. customs himself.

Jackson testified that she had made two drug running trips for Rainford. In the first, she testified that Rainford had recruited her to fly to Costa Rica. There, Rainford's coconspirators helped her strap cocaine to her body, which she successfully smuggled past U.S. customs and delivered to Rainford in New York. Rainford stipulated that he had at various times used a fake name, Eric Williams (he was compelled to so stipulate for reasons described below); Western Union records showed that Eric Williams had wired money to Jackson shortly before she flew to Costa Rica. Additional Western Union records showed that Rainford/Williams had also wired funds to people in Costa Rica while Jackson was there. Jackson identified those recipients as the coconspirators to whom Rainford had sent her and from whom she had received the cocaine.

Jackson testified that her second drug running trip for Rainford was to Jamaica, and that Rainford had accompanied her on both the outgoing and incoming flights. Flight records confirmed that they were on the same flights. Jackson testified that Rainford had given her the cocaine in Ja-

maica, and she had been arrested trying to get it through U.S. customs. Again, the jury drew the inference that Rainford had used Jackson as a buffer so that he did not have to carry the cocaine through customs himself.

## II

■ Rainford's first point of error is that his trial counsel, Christopher Booth, failed to file a notice of appeal on his behalf despite being directed to do so. Claims of ineffective assistance of counsel are governed by the *Strickland* two-prong test: petitioner must show both (1) "that trial counsel's representation fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With respect to the failure to file a notice of appeal, objective reasonableness is determined with reference to a

> Constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Roe v. Flores–Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). Although the Second Circuit has required that the Court provide a petitioner with the opportunity to be fully heard before rejecting a claim that trial counsel unreasonably failed to file a notice of appeal, *Campusano v. United States,* 442 F.3d 770, 776 (2d Cir.2006), there is no requirement for a testimonial hearing. *See Chang v. United States,* 250 F.3d 79, 85 (2d Cir.2001) ("[A]lthough a hearing may be warranted, that conclusion does not im-

ply that a movant must always be allowed to appear in a district court for a full hearing") (*quoting Machibroda v. United States,* 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)). Instead, in lieu of a testimonial hearing, the district court may "[supplement] the record [with] a detailed affidavit from trial counsel credibly describing the circumstances surrounding petitioner's claim." *Id.*

■ In the instant case, petitioner's claim must be rejected as a matter of law without the need for a hearing. First of all, petitioner has submitted practically nothing to support his claim that he instructed Mr. Booth to file a notice of appeal. His conclusory affidavit, filed with his reply submissions, states only that "right after the court sentenced me to 10–years' imprisonment, I told attorney Christopher Booth that I wanted to appeal my case.... [A]ttorney Christopher Booth had agreed with me to appeal my case." There is no detail at all about any alleged discussions concerning the appeal.

Vague as they are, these allegations might warrant further inquiry if they stood alone. But they do not. Pursuant to this Court's Order, Mr. Booth has submitted a detailed affidavit addressing this and Rainford's other claims. The affidavit shows that Mr. Booth had thorough discussions with Rainford about whether to file a notice of appeal and Rainford made a studied and deliberate decision not to. It suffices to quote from Mr. Booth's affidavit:

> On September 25, 2008 [one week after sentencing], I visited Rainford at the Metropolitan Detention Center, Brooklyn, New York, where he was incarcerated. On that date I advised him that he had the right to appeal his trial conviction and the sentence imposed by This Court. I further advised him that if his appeal was successful, it could result in a new trial or a lesser sentence. In addition he was informed that if he did file

an appeal, the Government would likely cross appeal from the trial court's denial of their application for an upward departure, based upon the inadequacy of the criminal history category arising from the defendant's prior narcotics felony conviction in the country of Jamaica, West Indies.

Rainford, and his family members, were also advised that I was available to do the appeal but that he should also consider getting another attorney to review the merits of the case from a "fresh" perspective and file an appeal if appropriate. I advised him that if I did the appeal, ineffective assistance of counsel would not be a ground.

At the meeting of September 25, 2008, Rainford told me that he and his family, did not want to appeal the case. He stated that he wanted the matter to end as the toll it had taken on he and his family was terribly painful. He did not want to go through another trial. He told me he feared that the government would win on its cross appeal and as a result his criminal history would go up and his ultimate sentence could be worse off. He did not believe the system would treat him fairly on appeal as it had failed to—in his opinion—at the trial and as a result things could get worse for him. In addition he asked me if his sentence could be reduced if he provided useful information to the Government. I explained that it could in the form of a Rule 35 motion among other things. Rainford said that he had information on a suspect wanted for a homicide. I advised him that I could pursue that for him and explained that he would have to give me certain basic information so that I could review his claims and if worthy, pass it along to the Government to begin the process. He said he would, but never did.

When Rainford advised me that he did not want to file an appeal, I asked him to sign a statement so indicating, and he did. A copy of that letter has been mailed to the court and Government under separate cover as I was unable to convert it to a pdf format for electronic filing. I told him that if he did not instruct me to file a notice to appeal and it was thus not filed, he would never have the opportunity to appeal again. Lastly, at no time after that meeting did the defendant or his family inform me in anyway whatsoever that he had changed his mind and wanted to appeal. After that meeting I spoke several times to Rainford by telephone and his family by telephone and in person, and not once did anyone mention dissatisfaction with the decision to forego the appeal.

The signed statement to which Mr. Booth refers is now part of the record before this Court: "I, Noel Rainford have discussed my case and appellate rights with my attorney Mr. Christopher Booth. I do not want him to file a notice of appeal as I will not be appealing my conviction and sentence in the E.D.N.Y., J. Cogan." It is dated September 25, 2008 at the Metropolitan Detention Center and bears Rainford's signature.

There is thus no contradiction on the record. Even crediting Rainford's conclusory affidavit, the two versions are easily reconciled. What happened was that immediately following sentencing on September 19, Rainford suggested to Mr. Booth that he wanted to appeal. Mr. Booth visited him at the MDC about a week later, discussed the pros and cons of the appeal with Rainford, and Rainford signed a statement confirming that he told Mr. Booth he did not want to appeal. Rainford has not in any way contradicted his own signature nor Mr. Booth's description of the process that led to the decision not to appeal.

I hold that Rainford knowingly and voluntarily waived his right to appeal. In

addition, he has failed to assert any non-frivolous claim that could have been raised on appeal. His claim of ineffective assistance of counsel is thus without merit. No evidentiary hearing is required. *See Chang*, 250 F.3d at 86; *United States v. Williams*, No. 06 Civ. 3950, 2009 WL 1162382 (S.D.N.Y. May 1, 2009).

## III

■ Rainford next asserts that Mr. Booth prevented him from testifying at trial despite Rainford's desire to testify. Rainford says he felt threatened because Mr. Booth told him that if Rainford chose to disregard Mr. Booth's advice, Rainford was "free to hire a new attorney." Rainford's affidavit does not set forth what testimony he thinks he would have given if he had testified, except that, in some unspecified way, he could have "contradict[ed] the testimonies of Alice Jackson and Derrick Venzen."

Mr. Booth denies having ever told Rainford not to take the witness stand, or that Rainford was "free to hire a new attorney" if Rainford insisted on testifying. Again, Mr. Booth's affidavit sets forth a very detailed explanation of how the decision came about that Rainford would not testify. Mr. Booth explains that originally, the plan was for Rainford to testify. Mr. Booth prepared the case for over eight months, participating in extensive meetings with Rainford and his family, on that assumption. During those meetings, Rainford advised Mr. Booth that the Western Union money transfers from "Eric Williams," which the government had turned over in discovery, were not his. Rainford advised Mr. Booth that he was not Eric Williams and the government would not be able to prove otherwise.

Mr. Booth pressed the government to disclose how it would prove that Rainford was Eric Williams. The government ultimately advised Mr. Booth that it had evidence of a Western Union transfer from Eric Williams to Rainford's step-daughter, and the government intended to call the step-daughter at trial to establish that Rainford was in fact Eric Williams. When Mr. Booth confronted Rainford with this, Rainford conceded that he was Eric Williams, and agreed to so stipulate to avoid having his step-daughter called to testify. Mr. Booth asserts that this caused him to question all of the information he had received from Rainford as well as the decision that he should testify.

On the eve of trial, the government disclosed to Mr. Booth that Rainford had served time in a Jamaican jail for the felony of conspiring to transport narcotics by airplane out of Jamaica. Rainford, according to Mr. Booth, had always assured Mr. Booth that he had no criminal history. Mr. Booth confronted Rainford with this new information and after some continued denials, Rainford admitted that he had this prior drug conviction. Mr. Booth explained to Rainford not only that the prior conviction could increase any sentence he might receive, but that if Rainford testified, he could be impeached with the conviction. In addition, Mr. Booth realized that Rainford had failed to disclose this conviction on his U.S. Immigration form, which required such disclosure, and Mr. Booth advised Rainford that this false statement also could be used to impeach his credibility. Mr. Booth avers that he asked Rainford "what he thought the jury would think upon hearing about his prior conviction," and Rainford "conceded they would find him untruthful and likely convict for that reason alone." Mr. Booth told Rainford that he agreed, and also counseled Rainford about a possible obstruction charge if he gave false testimony.

Mr. Booth avers that Rainford was unable to offer any "realistic, coherent, believable non-criminal explanation" as to

why he was on the same flight as Derrick Venzen, who was carrying and filling out papers showing Rainford's parents' address. Mr. Booth again asked Rainford how he thought the jury would regard his testimony after hearing Venzen's and Jackson's stories, and after learning of his prior conviction. Rainford again conceded that the jury would likely convict him just on the basis of his testimony.

According to his affidavit, Mr. Booth also explained to Rainford that if he did not testify, the jury would not hear of his prior conviction and the holes in his story. In exchange for the Rainford–is–Williams stipulation, Mr. Booth also got the government to agree not to attempt to use Rainford's prior attempt to smuggle drugs by airplane that had led to the Jamaican conviction as Rule 404(b) evidence. Mr. Booth states that he was advised by Rainford that Rainford "thought we had a better chance to win the case if he refrained from testifying." Mr. Booth agreed.

Mr. Booth's version of what happened is not only made credible by the extensive detail in his affidavit and the absence of any denial by Rainford, but by this Court's colloquy with Rainford, outside the presence of the jury, when the Court was advised that Rainford had elected not to testify:

> MR. BOOTH: Your Honor, I have spoken to Rainford about this issue many times and at great length and advised him of all the different options, and after hearing all the evidence and discussing strategy he advises me that he does not want to testify.
>
> I advised him it is his right and I would ask the Court to make inquiry if that is what he wants to do.

THE COURT: Mr. Rainford, you have the right but not the obligation to testify during your case; is that right?

THE DEFENDANT: Yes, sir.

THE COURT: Are you choosing not to testify after discussing that issue with your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: You've considered all the possibilities that he's identified for you, the benefits and the disadvantages of either testifying or not testifying?

THE DEFENDANT: Yes, sir.

THE COURT: And you're voluntarily making the decision not to testify; is that right?

THE DEFENDANT: Yes, sir.

The posture of this case, as to the issue of Rainford's decision not to testify, is indistinguishable from *Chang.* *Chang* was, like the present petition, a case of dueling affidavits: the petitioner claimed that his trial counsel had prevented him from testifying in his own defense, but the petitioner relied "solely on his own highly self-serving and improbable assertions," whereas his counsel gave a "detailed description of events [that] was eminently credible." *Chang,* 250 F.3d at 86. The Second Circuit held that a hearing was not required; it approved of the district court's decision to credit counsel's written account of the events in question. *Id.* ("It was ... within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing.").[1]

---

1. There can of course be circumstances, not present here, which require a court to hold a hearing. In *LoCascio v. United States,* 395 F.3d 51, 57 (2d Cir.2005), the petitioner's ineffective assistance claim was supported by affidavits consisting of hearsay: appellate counsel submitted an affidavit attesting that LoCascio's trial counsel, Anthony Cardinale, was willing to testify that LoCascio's co-de-

No issue warranting a further hearing is required on this record. Rainford himself told the Court at trial that he did not wish to testify. His attorney has provided a detailed explanation of the events and thought process leading to that decision. Rainford's conclusory statements that he was prevented from testifying fail to present any meritorious issue. *See Mohsin v. Ebert*, 626 F.Supp.2d 280, 315 (E.D.N.Y. 2009) ("where a habeas petitioner's self-serving allegations are contradicted by a credible statement of trial counsel, the court may choose to discredit the petitioner's assertion without further hearing."). In addition, Rainford has offered nothing to suggest that he was prejudiced by his failure to testify. *Id.* at 316 ("By adding his own live testimony at trial, [the petitioner] would have added no material exculpatory information but would have exposed himself to potentially damaging cross-examination").

### IV

■ Rainford claims that Mr. Booth failed to follow his instructions to "interview and subpoena[ ]" Western Union and travel agency personnel regarding the wire transfers and travel documents that the government used at trial. His brief asserts that Mr. Booth should have investigated Rainford's Jamaican conviction. The notion that Mr. Booth should have investigated the conviction, when Mr. Booth did not learn of it until days before trial because Rainford lied to him and said he had no convictions, a point that Rainford does not deny, is frivolous. Rainford is not entitled to use his own deceit of his attorney as a basis for habeas corpus relief.

With regard to the travel documents, Rainford asserts that Mr. Booth should have investigated why the government did not have a customs declaration form for Derrick Venzen. Rainford (or the legal assistant who has helped him with these papers in prison), apparently does not appreciate that the customs form was actually introduced into evidence, and showed Venzen's address as the address of Rainford's parents. As to Jackson's ticket, although Rainford asserts that Mr. Booth should have subpoenaed the "travel agency," he does not say what travel agency. The closest he comes is averring that he gave Mr. Booth "the names of [unspecified] different businesses and their locations." It was not incumbent upon Mr. Booth to pursue wild goose chases with no indication from Rainford, even at this late date, as to where they might have lead.

Finally, this Court notes that Rainford's reply brief contains a number of mostly unintelligible assertions about what additional investigation might have shown, none of which are supported by his affidavit. As far as can be determined, the assertions fall into two groups: (1) collateral attacks on witness credibility as to details that would probably not have been admissible; and (2) assertions as to what Mr. Booth should have done without any indication what the result of those efforts would have been. None of these points, singly or collectively, demonstrate that Mr. Booth fell below a standard of objectively reasonable performance in investigating this case or that the outcome of Rainford's trial might have been different if he had undertaken the effort that Rainford asserts he should have undertaken.

---

fendant, John Gotti, had threatened to kill Cardinale if Cardinale acted in LoCascio's interest at the expense of Gotti's interest. In that unique situation, the Second Circuit concluded that the affidavit from an officer of the court alleging "an attempt to subvert the ad-

versary process in a fundamental and criminal manner" and promising the presentation of admissible evidence was sufficient to warrant a hearing, although only "by a narrow margin." *Id.* at 57.

## V

■ Rainford challenges his sentence in that his status as a non-U.S. citizen deprives him of the right to participate in early release or minimum security facilities. This is a sentencing issue of non-Constitutional proportions that is therefore not cognizable on habeas corpus. *Butt v. United States,* No. 08–cv–3474, 2009 WL 36851 (E.D.N.Y. Jan. 6, 2009), presented the identical issue raised here. Judge Bianco held that the petitioner's assertion of "collateral consequences he faced in the Bureau of Prisons because of his status as a deportable alien" did not "rise to the level of a Constitutional error, jurisdictional error, or an error of fact or law representing a fundamental defect...." *Id.* at *2.

Even if this Court could consider the alleged sentencing error in this proceeding, Rainford, like the petitioner in *Butt,* has failed to make any showing that the difference in his treatment in prison is so extraordinary that a departure would have been required. The Second Circuit has strongly suggested that arguments like those asserted by Rainford are inadequate for a departure: "Even if it were a steadfast policy of the Bureau [of Prisons] to deny reassignment to relaxed-security facilities to alien prisoners who must be deported on account of their convictions, we would consider that policy an inappropriate basis for departure from the imprisonment range prescribed by the Guidelines...." *United States v. Restrepo,* 999 F.2d 640, 645 (2d Cir.1993).

■ Finally, to the extent Rainford is arguing that Mr. Booth was ineffective for not calling the Court's attention to the collateral consequences of his immigration status at sentencing, the Court notes that it was well aware of Rainford's immigration status at the time of sentencing—it was reflected in the pedigree information at the beginning of the Presentence Investigation Report—and the collateral consequences flowing from that status. The Court would have imposed the same sentence notwithstanding any highlighting of Rainford's immigration status.

## CONCLUSION

Petitioner's application for a writ of habeas corpus and motion for a hearing on it is denied, and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2254(c)(2), a certificate of appealability shall not issue. In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith.

**SO ORDERED.**